1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GEORGE NOTCHAL TORRES,

11              Petitioner,            No. CIV S-08-2742-WBS-TJB

12       vs.

13   JAMES E. TILTON,

14              Respondent.       <u>ORDER AND FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16                          I.  INTRODUCTION

17        Petitioner George Notchal Torres is a state prisoner proceeding through counsel with a

18   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, (1)

19   Petitioner's request for judicial notice is granted; (2) the remaining requests are denied; and (3) it

20   is recommended that habeas relief be denied.

21                       II.  PROCEDURAL HISTORY

22        Petitioner is currently serving sentences of 15 years to life for second degree murder and

23   25 years to life for the firearm discharge enhancement, consecutively, following his 2005

24   conviction by jury trial in the Sacramento County Superior Court.  Petitioner appealed his

25   conviction to the California Court of Appeal, Third Appellate District, which issued a reasoned

26   opinion affirming the conviction on August 25, 2006.  *See* Lodged Doc. No. 1.  Petitioner sought

1

1 | review in the California Supreme Court, which denied the appeal without a written decision on

2 | November 1, 2006. *See* Lodged Doc. No. 2.

3 | On October 16, 2007, Petitioner filed a petition for writ of habeas corpus with the

4 | Sacramento County Superior Court. *See* Lodged Doc. Nos. 3-4. The Superior Court issued a

5 | reasoned opinion denying the petition on December 17, 2007. *See* Lodged Doc. No. 5.

6 | Petitioner sought relief in the California Court of Appeal, Third Appellate District, and the

7 | California Supreme Court; those petitions were likewise denied, but without written opinions.

8 | *See* Lodged Doc. Nos. 6-11.

9 | On November 14, 2008, Petitioner filed his federal petition for writ of habeas corpus.

10 | Petitioner amended the petition on November 30, 2008, and December 2, 2008. Respondent

11 | filed an answer to the petition on July 22, 2009, to which Petitioner filed a traverse on July 30,

12 | 2009.

13 | ### III.  FACTUAL BACKGROUND[1]

14 | The 61-year-old defendant shot and killed an unarmed 19-year-old
victim, for no reason according to a couple of witnesses, and then
15 | fled the scene. Defendant initially denied knowing about the
shooting, then denied doing it, and finally claimed self-defense.
16 | Defendant kept several firearms and several thousand rounds of
ammunition in his house and carried a pistol on occasion in the
17 | neighborhood.

18 | ### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

19 | An application for writ of habeas corpus by a person in custody under judgment of a state

20 | court can be granted only for violations of the Constitution or laws of the United States. 28

21 | U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

22 | *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

23 |

24 | [1] These facts are from the California Court of Appeal's opinion issued on August 25,
2006. *See* Lodged Doc. No. 1, at 6-7. Pursuant to the Antiterrorism and Effective Death Penalty
25 | Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner
rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Moses*
26 | *v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir.
2004).

1  This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

2  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521

3  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under

4  AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

5  state court proceedings unless the state court's adjudication of the claim:

6          (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
7          determined by the Supreme Court of the United States; or

8          (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
9          State court proceeding.

10  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

11  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

12      In applying AEDPA's standards, the federal court must "identify the state court decision

13  that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

14  Where more than one state court has adjudicated Petitioner's claims, a federal habeas court

15  analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)

16  (finding presumption that later unexplained orders, upholding judgment or rejecting same claim,

17  rests upon same ground as prior order)). Thus, a federal habeas court looks through ambiguous

18  or unexplained state court decisions to the last reasoned decision to determine whether that

19  decision was contrary to or an unreasonable application of clearly established federal law. *Bailey*

20  *v. Rae,* 339 F.3d 1107, 1112-13 (9th Cir. 2003). "The question under AEDPA is not whether a

21  federal court believes the state court's determination was incorrect but whether that

22  determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550

23  U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

24                          V. CLAIMS FOR REVIEW

25      The petition for writ of habeas corpus sets forth five requests and one ground for relief.

26  Petitioner requests: (1) judicial notice; (2) an order to show cause; (3) discovery; (4) an

1  evidentiary hearing; and (5) leave to supplement his amended petition.[2] Pet'r's Am. Pet. 27, 49-
2  51, ECF No. 7. Petitioner also claims that he was denied his Sixth Amendment right to counsel
3  by trial counsel's deficient performance. *Id.* at 28-49.

4  A. First Request: Judicial Notice

5  First, Petitioner requests judicial notice of the "California Supreme Court file in *In re*
6  *Torres*, S0163343; of the Court of Appeal for the Third Appellate District's two files in *People v.*
7  *Torres*, C049800, and *In re Torres*, C057756; and in the Sacramento County Superior Court's
8  file in *People v. Torres*, case number 03F04954." *Id.* at 27. Petitioner explains that
9  "reproducing the record for use in connection with this petition would be costly and beyond the
10  financial ability of [Petitioner] and his family." *Id.* If "otherwise necessary," Petitioner asserts,
11  he "stands ready to lodge copies of the Clerk's and Reporter's Transcripts with this Court." *Id.*

12  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either
13  (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate
14  and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
15  FED. R. EVID. 201(b); *see United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). "A
16  court shall take judicial notice if requested by a party and supplied with the necessary
17  information." FED. R. EVID. 201(d). The record of a state court proceeding is a source whose
18  accuracy cannot reasonably be questioned, and judicial notice may be taken of court records.
19  *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987), *cert. denied*, 486 U.S.
20  1040 (1988); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd*,
21  645 F.2d 699 (9th Cir. 1981), *cert. denied*, 454 U.S. 1126 (1981); *see also Colonial Penn Ins.*
22  *Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615
23  F.2d 736, 738 (6th. Cir. 1980).

24

25  [2] Petitioner's second through fifth requests are construed as such based on the petition's
prayer for relief, and Petitioner's broad argument that he is "entitled to subpoena power and
adequate funding and the opportunity to investigate before adjudication of this petition." Pet'r's
26  Am. Pet. 49-51.

4

1    Accordingly, Petitioner's request for judicial notice of (1) the California Supreme Court's
2    file in *In re Torres*, No. S0163343; (2) the California Court of Appeal's two files in *People v.*
3    *Torres*, No. C049800, and *In re Torres*, No. C057756; and (3) the Sacramento County Superior
4    Court's file in *People v. Torres*, No. 03F04954, is granted. FED. R. EVID. 201(b)(2), (c); *see*
5    *also, e.g., Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995) (upholding
6    judicial notice of orders and decisions by other courts), *rev'd on other grounds*, 520 U.S. 548
7    (1996); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244,
8    248 (9th Cir. 1992) (holding courts may take judicial notice of "proceedings in other courts, both
9    within and without the federal judicial system, if those proceedings have a direct relation to
10   matters at issue"); *Mullis*, 828 F.2d at 1388 n.9 (determining courts may take judicial notice of
11   contents in court files in other lawsuits); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th
12   Cir. 1986) (finding courts may take judicial notice of matters of public record outside pleadings).

13       B. Second Request: Order To Show Cause

14       Second, in his prayer for relief, Petitioner requests an "[o]rder . . . to show cause" as to
15   "why Petitioner is not entitled to the relief sought." Pet'r's Am. Pet. 50. As stated earlier,
16   Respondent filed an answer to the petition on July 22, 2009, to which Petitioner filed a traverse
17   on July 30, 2009. Accordingly, Petitioner's request for an order to show cause is denied as moot.

18       C. Third Request: Discovery

19       Third, Petitioner requests discovery. In his prayer for relief, Petitioner seeks to: (1)
20   acquire "sufficient funds and opportunity to secure investigation and expert assistance as
21   necessary to fully develop and prove the facts alleged in this petition;" (2) "proceed without
22   prepayment of costs and fees and . . . to obtain subpoenas without fee for witnesses and
23   documents necessary to prove the facts alleged in this petition;" and (3) "take depositions,
24   request admissions, and propound interrogatories and the means to pursue the testimony of
25   witnesses." *Id.* at 50-51.

26       "The writ of habeas corpus is not a proceeding in the original criminal prosecution but an

5

1  independent civil suit." *Riddle v. Dyche*, 262 U.S. 333, 335-36 (1923); *see, e.g.*, *Keeney v.*
2  *Tamayo-Reyes*, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting).  However, modern habeas
3  corpus procedure has the same function as an ordinary appeal.  *O'Neal v. McAnnich*, 513 U.S.
4  432, 442 (1995) (recognizing federal court's function in habeas corpus proceedings is to "review
5  errors in state criminal trials" (emphasis omitted)).  A habeas proceeding does not proceed to
6  "trial," and unlike other civil litigation, parties in a habeas proceeding are not entitled to
7  discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Harris v. Nelson*,
8  394 U.S. 286, 295 (1969).  Although discovery is available pursuant to Rule 6 of the Federal
9  Rules Governing Section 2254 Cases, it is only granted at the court's discretion, and upon a
10  showing of good cause. *Bracy*, 520 U.S. at 904; *McDaniel v. U.S. District Court* (*Jones*), 127
11  F.3d 886, 888 (9th Cir. 1997); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997); *see also* Rule
12  6(a), Federal Rules Governing Section 2254 Cases.

13       Good cause is shown "where specific allegations before the court show reason to believe
14  that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . .
15  entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 300); *see also Pham v.*
16  *Terhune*, 400 F.3d 740, 743 (9th Cir. 2004).  A request for discovery "must also include any
17  proposed interrogatories and requests for admission, and must specify any requested documents."
18  Rule 6(b), Federal Rules Governing Section 2254 Cases.  Federal courts have "the power to
19  'fashion appropriate modes of procedure,' including discovery, to dispose of habeas petitions 'as
20  law and justice require[.]'" *Bracy*, 520 U.S. at 904 (citations omitted) (quoting *Harris*, 394 U.S.
21  at 299-300); *see also Bittaker*, 331 F.3d at 728.

22       Here, Petitioner does not demonstrate good cause as to why his request for discovery
23  should be granted.  Petitioner does not state why further investigation is necessary, or why said
24  discovery is relevant to a determination of the petition's merits.  Petitioner, therefore, fails to
25  establish good cause, and absent any good cause, Petitioner's request for discovery is denied.
26  ///

1        D.  Fourth Request:  Evidentiary Hearing

2        Fourth, Petitioner requests an evidentiary hearing.  In his prayer for relief, Petitioner asks

3   for "an evidentiary hearing at which proof may be offered concerning the allegations in this

4   petition, or any amended or supplemental petition."  Pet'r's Am. Pet. 51.  That way, the "full

5   evidentiary hearing" will grant Petitioner "access to this Court's subpoena power, to adequate

6   funding, and the opportunity to investigate all of his claims."  *Id.* at 50.

7        Under 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary

8   hearing must first determine whether a factual basis exists in the record to support a petitioner's

9   claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

10  187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

11  2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  "[W]here the petitioner

12  establishes a colorable claim for relief and has never been afforded a state or federal hearing on

13  this claim, we must remand to the district court for an evidentiary hearing."  *Earp*, 431 F.3d at

14  1167 (citing *Insyxiengmay*, 403 F.3d at 670; *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir.

15  2004); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  In other words, a hearing is

16  required if:  "(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas

17  relief, and (2) he did not receive a full and fair opportunity to develop those facts[.]"  *Williams v.*

18  *Woodford*, 384 F.3d 567, 586 (9th Cir. 2004).

19       Here, Petitioner fails to establish the necessary requirements for an evidentiary hearing.

20  As explained later, Petitioner does not allege facts that establish a colorable claim for relief

21  because his ineffective assistance of counsel claim fails the two-pronged *Strickland* test, and the

22  Superior Court's decision is reasonable.  *See infra* Part V.F; *see also Strickland v. Washington*,

23  466 U.S. 668, 687 (1984).  Accordingly, Petitioner's request for an evidentiary hearing is denied.

24       E.  Fifth Request:  Leave to Supplement Amended Petition

25       Fifth, Petitioner requests leave to supplement his amended petition.  In his prayer for

26  relief, Petitioner seeks:  (1) "a reasonable opportunity within which to amend this petition to

                                                    7

1 │ include claims which become apparent from further investigation or from allegations made in the
2 │ return or informal opposition to the Petition;" and (2) "a reasonable opportunity to supplement
3 │ the petition to include claims which may become known as a result of further investigation and
4 │ information which may hereafter come to light." Pet'r's Am. Pet. 50-51.

5 │     A petitioner may amend a petition for writ of habeas corpus once "as a matter of course,"
6 │ and without leave of court, before a response has been filed under Federal Rule of Civil
7 │ Procedure 15(a), as applied to habeas corpus actions pursuant to 28 U.S.C. § 2242 and Rule 11 of
8 │ the Federal Rules Governing Section 2254 Cases. *Calderon v. U.S. District Court* (*Thomas*), 144
9 │ F.3d 618, 620 (9th Cir. 1998); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Under Rule
10 │ 15(a), once a responsive pleading has been filed, a petitioner must seek leave of court before
11 │ being allowed to amend. FED. R. CIV. P. 15(a); *see also Anthony v. Cambra*, 236 F.3d 568, 577
12 │ (9th Cir. 2000). "Although, under the rule, 'leave shall be freely given when justice so requires,'
13 │ the district court may consider whether there is any evidence of 'undue delay, bad faith or
14 │ dilatory motive' with respect to the filing of the amendment when determining whether leave
15 │ should be granted." *Anthony*, 236 F.3d at 577. In deciding whether to allow an amendment, the
16 │ Court may consider "bad faith, undue delay, prejudice to the opposing party, futility of the
17 │ amendment, and whether the party has previously amended his pleadings." *Bonin*, 59 F.3d at
18 │ 844-45 (applying Rule 15(a) in habeas case).

19 │     Here, a responsive pleading has been filed, as well as Petitioner's traverse, and the matter
20 │ is ready for a decision. Accordingly, any leave to amend must be approved. Petitioner already
21 │ amended his petition twice: once on November 20, 2008, and again on December 2, 2008, both
22 │ times before an answer was filed. Now, Petitioner seeks to supplement his second amended
23 │ petition with "information" from "further investigation." Pet'r's Am. Pet. 50-51. Petitioner is
24 │ not entitled to conduct discovery or to an evidentiary hearing for further investigation, *see supra*
25 │ Part V.C-D, and Petitioner fails to identify any specific information for amendment purposes.
26 │ Accordingly, Petitioner's request to supplement his second amended petition is dilatory, and the

1 request is denied.

2     Thus, this matter is now ready for decision.  For the following reasons, it is recommended
3 that habeas relief be denied.

4     F.  Ineffective Assistance of Counsel

5     Petitioner argues that his Sixth Amendment right to counsel was violated by trial
6 counsel's ineffective assistance.  Specifically, Petitioner claims his counsel failed to adequately
7 investigate and call relevant experts to testify about his disabling mental disorder to support his
8 defense that the homicide was manslaughter.

9         1.  Legal Standard for Ineffective Assistance of Counsel

10     The Sixth Amendment guarantees the effective assistance of counsel.  The United States
11 Supreme Court sets forth the test for demonstrating ineffective assistance of counsel in
12 *Strickland v. Washington*, 466 U.S. 668 (1984).  An allegation of ineffective assistance of
13 counsel requires that a petitioner establish two elements: (1) counsel's performance was
14 deficient; and (2) the petitioner was prejudiced by the deficiency.  *Strickland*, 466 U.S. at 687;
15 *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

16     First, a petitioner must show that, considering all the circumstances, counsel's
17 performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  To
18 this end, a petitioner must identify the acts or omissions that are alleged not to have been the
19 result of reasonable professional judgment.  *Id.* at 690.  The federal court must then determine
20 whether in light of all the circumstances, the identified acts or omissions were outside the wide
21 range of professional competent assistance.  *Id.*  "We strongly presume that counsel's conduct
22 was within the wide range of reasonable assistance, and that he exercised acceptable professional
23 judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990)
24 (citing *Strickland*, 466 U.S. at 689).

25     Second, a petitioner must establish that he was prejudiced by counsel's deficient
26 performance.  *Strickland,* 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

9

1  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

2  been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine

3  confidence in the outcome." *Id.*; *see also Williams,* 529 U.S. at 391-92; *Laboa v. Calderon,* 224

4  F.3d 972, 981 (9th Cir. 2000).

5           Defense counsel has a "duty to make reasonable investigations or to make a reasonable

6  decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "This

7  includes a duty to . . . investigate and introduce into evidence records that demonstrate factual

8  innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict."

9  *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir. 2001) (citing *Hart v. Gomez,* 174 F.3d 1067,

10 1070 (9th Cir. 1999)). In this regard, it has been recognized that "the adversarial process will not

11 function normally unless the defense team has done a proper investigation." *Siripongs v.*

12 *Calderon*, 133 F.3d 732, 734 (9th Cir. 1998) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384

13 (1986)). Therefore, counsel must, "at a minimum, *conduct a reasonable investigation* enabling

14 him to make informed decisions about how best to represent his client." *Hendricks v. Calderon*,

15 70 F.3d 1032, 1035 (9th Cir. 1995) (citation and internal quotation marks omitted) (quoting

16 *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)).

17          On the other hand, where an attorney has consciously decided not to conduct further

18 investigation because of reasonable tactical evaluations, his or her performance is not

19 constitutionally deficient. *See Siripongs*, 133 F.3d at 734; *Babbitt v. Calderon*, 151 F.3d 1170,

20 1173 (9th Cir. 1998); *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to

21 investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins*

22 *v. Smith*, 539 U.S. 510, 533 (2003) (quoting Strickland, 466 U.S. at 691); *see also Kimmelman*,

23 477 U.S. at 385 (finding counsel "neither investigated, nor made a reasonable decision not to

24 investigate"); *Babbitt*, 151 F.3d at 1173-74. A reviewing court must "examine the

25 reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" *United States v.*

26 *Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting *Strickland*, 466 U.S. at 690).

1  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in
2  light of the strength of the government's case.'" *Bragg*, 242 F.3d at 1088 (quoting *Eggleston v.*
3  *United States*, 798 F.2d 374, 376 (9th Cir. 1986)).

4        In order to provide adequate representation of a criminal defendant who may suffer from
5  a mental defect, counsel must conduct a reasonable investigation into the defendant's mental
6  health. *See, e.g.*, *Raley v. Ylst*, 470 F.3d 792, 800-01 (9th Cir. 2006) (discussing counsel's
7  obligation to investigate mental health for purposes of ascertaining viability of mental defenses at
8  trial). Counsel's investigation must permit informed decisions about how best to represent the
9  client. *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994). Reasonable investigation of a
10  defendant's mental health includes, at a minimum, discussing mental health issues with the
11  defendant and reviewing pertinent medical records. *See Jennings v. Woodford*, 290 F.3d 1006,
12  1013-14 (9th Cir. 2002) (examining counsel's failure to investigate which amounted to deficient
13  performance). The thoroughness of counsel's investigation and overall performance are
14  measured in light of the prevailing professional norms at the time of counsel's representation.
15  *Wiggins*, 539 U.S. at 523 (citing *Strickland*, 466 U.S. at 688). Accordingly, state law in place at
16  the time of a defendant's trial is relevant to a federal court's determination of the prevailing legal
17  norms against which counsel's conduct must be measured. *See, e.g.*, *id.* at 523-24 (evaluating
18  counsel's conduct in light of state of law in place at time of defendant's trial); *Jennings*, 290 F.3d
19  at 1015-16 (same).

20        2. State Court Decision

21        Here, because the California Supreme Court and California Court of Appeal summarily
22  denied the petition, the state court decision appropriate for review is the Superior Court's
23  decision. In applying AEDPA's standards, this Court finds the Superior Court properly held that
24  "[t]he portrayal of the Petitioner as a man living in a gang-infested neighborhood was a
25  reasonable defense strategy." Lodged Doc. No. 5, at 2. Petitioner failed to establish the two-
26  pronged test under *Strickland*, 466 U.S. at 687, i.e., that (1) counsel's performance was deficient;

1  and (2) Petitioner was prejudiced by the deficiency.

2      First, Petitioner did not show that counsel's performance fell below an objective standard
3  of reasonableness when counsel chose to pursue a self-defense theory after sufficiently
4  investigating Petitioner's dementia and finding conflicting evidence.  Trial counsel retained
5  neuropsychologist, Dr. Wicks, who recounted that Petitioner's daughter "told him that petitioner
6  would tend to lose his train of thought and had grown increasingly paranoid over the last few
7  years."  Lodged Doc. No. 5, at 1.  In Dr. Wick's opinion, Petitioner's behavior was "common to
8  elderly individuals with early stage dementia and that petitioner was experiencing a significant
9  degree of cognitive disruption, consistent with frontal lobe or executive impairment."  *Id.*  Dr.
10  Wicks, however, opined that "the evaluation is still incomplete."  *Id.* (internal quotation marks
11  omitted).  Dr. Wicks then recommended that a PET scan be done, which was ordered and "with
12  normal results."  *Id.*

13      Dr. Globus, another expert contacted by trial counsel, "opined that while the scan did not
14  offer support of the finding of early stage dementia, it did not contradict the finding either."  *Id.*
15  Dr. Globus also reviewed Dr. Wicks' findings, "but noted that the testing was not completed"
16  due to Petitioner's "uncooperativeness."  *Id.*  Dr. Globus's memorandum, dated September 15,
17  2004, referred to an EEG test that was performed and "read by Dr. Brugman, with normal
18  findings."  *Id.* at 1-2.  That memorandum "additionally alluded to the fact that Dr. Hamby did not
19  believe Petitioner had early signs of dementia."  *Id.* at 2.

20      Trial counsel also made a tactical decision to forego evidence of Petitioner's mental
21  condition based on Petitioner's criminal record.  Petitioner had a prior manslaughter conviction,
22  and trial counsel moved to "exclude the use of that conviction for the purpose of impeachment."
23  Rep.'s Tr. on Appeal vol. 1, 22.  At that point, the People did not seek "to present this
24  [conviction] for purposes of impeachment," *id.* at 23, and the trial court granted the motion.
25  Rep.'s Tr. on Appeal vol. 2, 456.  The trial court made "clear on the record," however, "that
26  these rulings are . . . fluid based on how the testimony goes."  Rep.'s Tr. on Appeal vol. 1, 23.

1   Indeed, at the motion for a new trial, defense counsel revealed his concern that "there were other
2   ways in which the prior manslaughter could become relevant, and one of those ways would be if
3   there was character evidence presented on behalf of [Petitioner] . . . ." Rep.'s Tr. on Appeal vol.
4   2, 456. Thus, trial counsel could reasonably conclude that evidence of Petitioner's mental state,
5   i.e., his alleged dementia, may potentially open the door to Petitioner's manslaughter conviction.
6   *See, e.g.*, *Williams*, 384 F.3d at 619 ("If the defense introduced evidence to suggest that
7   [petitioner's] troubled family background or diminished mental capacity caused the offenses at
8   issue, then the prosecution would probably present gang evidence to show that the offenses were
9   part of [petitioner's] gang lifestyle, not the result of any family problems or diminished mental
10  capacity."); *U.S. v. Schuler*, 813 F.2d 978, 984-85 (9th Cir. 1987) ("The Ninth Circuit has
11  consistently upheld the admission into evidence of other acts of a defendant where, as here, that
12  defendant's mental state is at issue." (citing *United States v. McCollum*, 732 F.2d 1419, 1423-27
13  (9th Cir. 1984), *cert. denied*, 469 U.S. 920 (1984) (upholding trial court's admission into
14  evidence of 12-year-old conviction for armed robbery where defendant claimed he acted under
15  hypnosis at time of robbery))); *In re Andrews*, 28 Cal. 4th 1234, 1242, 1248-49, 1251, 124 Cal.
16  Rptr. 2d 473, 52 P.3d 656 (2002) (affirming referee's findings that if trial counsel had witnesses
17  testify about "petitioner's mental health, including a diagnosis of a learning disorder, brain
18  impairment and posttraumatic stress disorder," *inter alia*, "[e]vidence would have been presented
19  detailing the facts of petitioner's prior convictions," and "mental health experts would likely
20  have been called" for rebuttal).

21      Consequently, the Superior Court appropriately found that "counsel was diligent in
22  investigating and exploring the possibility of presenting defendant's mental condition." Lodged
23  Doc. No. 5, at 12. As the Superior Court noted, counsel "retained several experts" and "had
24  extensive testing done" on Petitioner. *Id.* When reviewing the record, the Superior Court
25  recognized "[t]he opinion of Dr. Wicks was that petitioner was suffering from early stage
26  dementia. A Dr. Hamby, however, did not agree, and this diagnosis was not supported by the

13

1   PET scan, EEG or other testing." *Id.*; *compare In re Scott,* 29 Cal. 4th 783, 824-26, 129 Cal.
2   Rptr. 2d 605, 61 P.3d 402 (2003) (finding counsel's investigation into mental defenses was
3   "minimal" where counsel consulted two mental health experts for purpose of ascertaining
4   competency and researched possible defense based on drug Petitioner was using), *In re Fields,* 51
5   Cal. 3d 1063, 1074-76, 275 Cal. Rptr. 384, 800 P.2d 862 (1990) (recognizing counsel's
6   investigation was adequate to meet "minium standards" where counsel caused defendant to be
7   examined by two psychiatrists), *and People v. Williams,* 44 Cal. 3d 883, 944-46, 245 Cal. Rptr.
8   336, 751 P.2d 395 (1988) (holding investigation was reasonable where counsel based decision to
9   curtail investigation on two psychiatrists' evaluations of defendant), *with Jennings*, 290 F.3d at
10  1013 (finding counsel's failure to appoint experts to evaluate defendant's mental state, *inter alia,*
11  supported finding that counsel's investigation into mental defenses was constitutionally
12  deficient), *Seidel v. Merkle,* 146 F.3d 750, 756 (9th Cir. 1998) (noting failure to obtain "mental
13  or psychiatric evaluations" of defendant), *and Bloom v. Calderon,* 132 F.3d 1267, 1277 (9th Cir.
14  1997) (holding counsel was ineffective where he failed, *inter alia,* to retain mental health expert
15  until days before trial).

16      As well, the Superior Court explained that Petitioner adamantly wanted to show the
17  "dangers of his neighborhood" to the jury. Lodged Doc. No. 5, at 2. The Superior Court
18  recognized that Petitioner's "fears were presented as real and not as delusional or exaggerated in
19  an attempt to gain sympathy from the jury." *Id.* Petitioner even "argued to present more
20  corroborative evidence of threats against him" at sentencing. *Id.* The Superior Court, therefore,
21  reasonably found that "[t]o present psychiatric evidence" showing Petitioner was "only
22  imagining the threats . . . might have backfired against this strategy." *Id.*

23      Second, Petitioner cannot establish that he was prejudiced by counsel's decision to pursue
24  a self-defense theory over a defense that Petitioner acted under delusion, deficient performance
25  or not. This trial took place in 2005, when "trial defense counsel had the benefit of the Padilla
26  opinion; the Mejia-Lenares opinion had not yet been issued." *Id.* at 3 (citing *People v. Mejia-*

14

1   *Lenares*, 135 Cal. App. 4th 1437, 38 Cal. Rptr. 3d 404 (2006); *People v. Padilla*, 103 Cal. App.

2   4th 675, 126 Cal. Rptr. 2d 889 (2002)). *Padilla* provides that evidence of hallucination is

3   admissible only to reduce the offense to second degree murder, of which Petitioner in this case

4   was convicted. *Padilla*, 103 Cal. App. 4th at 679, 126 Cal. Rptr. 2d 889; *see also Mejia-*

5   *Lenares*, 103 Cal. App. 4th at 1446, 38 Cal. Rptr. 3d 404 ("[W]e conclude that imperfect self-

6   defense cannot be based on delusion alone.").

7           In *Padilla*, the California Court of Appeal, Fifth Appellate District, first defined

8   hallucination as "a perception with no objective reality." *Padilla*, 103 Cal. App. 4th at 678, 126

9   Cal. Rptr. 2d 889. A hallucination fails the objective test "of whether provocation or heat of

10  passion can negate malice so as to mitigate murder to voluntary manslaughter" because "[a]

11  perception with no objective reality cannot arouse the passions of the ordinarily reasonable

12  person." *Id.* at 678-79, 126 Cal. Rptr. 2d 889. The Court of Appeal then held that "[o]n the

13  other hand, nothing in the law necessarily precludes . . . hallucination from negating deliberation

14  and premeditation so as to reduce first degree murder to second degree murder, as that test is

15  subjective." *Id.* at 679, 126 Cal. Rptr. 2d 889. Since Petitioner was convicted of second degree

16  murder, Petitioner cannot claim prejudice against trial counsel's use of the self-defense theory.

17          In any case, the evidence belies the notion that Petitioner was so delusional that he could

18  not intend to kill. Any expert testimony offered by Petitioner would have had to overcome other

19  witness testimony, which does not provide any support for the notion that, at the time of the

20  offense, Petitioner was suffering from mental illness such that he could not harbor the intent

21  necessary to commit the crime of second degree murder.

22          According to Petitioner's trial testimony, on the day of the crime, Petitioner confirmed

23  that he "looked out of [his] house . . . , saw that there were African-American people on the street

24  and . . . decided, I need to have my gun with me today." Rep.'s Tr. on Appeal vol. 2, 315-16.

25  Petitioner did not have a permit to carry a concealed weapon in public and knew it was fully

26  loaded when he left his house. *Id.* at 315. Evidence reveals that the initial argument was

15

between the 19-year-old victim and another individual, not Petitioner. Rep.'s Tr. on Appeal vol. 1, 76, 92-95, 105-06, 118-19; *see* Pet'r's Am. Pet. 12 ("[A] young, drunk male, who had been working on the car, interceded and pushed Brandon and began to harass him."). The 19-year-old then said, "I can come back and cap you." Rep.'s Tr. on Appeal vol. 1, 122. He might have added, "I've been shot in the head before, I'm not responsible for what I do." *Id.* at 201; *see id.* at 121, 163; *but see id.* at 99 ("No he didn't say anything like that, unless he said it when I went and sat down."). Petitioner interceded and said, "[W]e do it, we don't talk about it; or I'll do it, I don't talk about it." *Id.* at 124. Petitioner then shot the teenager from about 20 feet away. Rep.'s Tr. on Appeal vol. 2, 309. Afterward, Petitioner "went over to [his] brother's house," wrapped the firearm in "[p]lastic, sheet, tarp," and concealed it. *Id.* at 317-18. When questioned by police about the shooting, Petitioner first denied knowing about it, and then denied doing it. *Id.* at 320, 324. At trial, Petitioner admitted, "[H]onestly, I didn't see a weapon." *Id.* at 324.

Accordingly, the Superior Court duly reasoned that "evidence that petitioner was acting under a delusion . . . would have served only to reduce the offense to second degree murder, of which petitioner was convicted, as opposed to manslaughter or acquittal based on self-defense." Lodged Doc. No. 5, at 2. The Superior Court noted that Petitioner failed to enter an insanity plea, nor does he now claim an insanity plea should have been entered or that he lacked mental capacity to commit a crime. *Id.* at 13. The Superior Court also found that regardless, the record was "not sufficient to have established either insanity or incapacity." *Id.* Rather, "Petitioner's problem was that the jury did not believe" his self-defense theory. *Id.*; *see also People v. Lawley*, 27 Cal. 4th 102, 170, 115 Cal. Rptr. 2d 614, 38 P.3d 461 (2002) ("[T]he evidence tended strongly to show that defendant acted out of anger and vengefulness rather than an insane delusion."). In sum, the Superior Court properly concluded that counsel reasonably chose to dispense with a defense that petitioner was delusional, because this (1) "would have reduced the offense only to second degree murder;" and (2) "would have the potential to undermine the credibility of the defendant's claim of self defense." Lodged Doc. No. 5, at 12.

16

1                                    VI.  CONCLUSION

2           For the foregoing reasons, IT IS HEREBY ORDERED that:

3           1.  Petitioner's request for judicial notice of (1) the California Supreme Court's file in *In*

4    *re Torres*, No. S0163343; (2) the California Court of Appeal's two files in *People v. Torres*, No.

5    C049800, and *In re Torres*, No. C057756; and (3) the Sacramento County Superior Court's file

6    in *People v. Torres*, No. 03F04954, is GRANTED;

7           2.  Petitioner's request for an order to show cause is DENIED as moot;

8           3.  Petitioner's request for an order initiating discovery is DENIED;

9           4.  Petitioner's request for an evidentiary hearing is DENIED; and

10          5.  Petitioner's request for leave to supplement his amended petition is DENIED.

11          IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus

12   be DENIED.

13          These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

15   days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within seven days after service of the objections.  Failure to file

19   objections within the specified time may waive the right to appeal the District Court's order.

20   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57

21   (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of

22   appealability should be issued in the event he elects to file an appeal from the judgment in this

23   ///

24   ///

25   ///

26   ///

17

1  case. *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

2  deny certificate of appealability when it enters final order adverse to applicant).

3  DATED:        September 13, 2010.

4

5

6

7  TIMOTHY J BOMMER
   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

18